## CHAS. PATTERSON v. STATE.

No. A-3408. Opinion Filed June 5, 1920.

(190 Pac. 271.)

(Syllabus.)

INTOXICATING LIQUORS—Insufficiency of Evidence—Maintaining Public Nuisance. In a prosecution for maintaining a public nuisance, evidence held insufficient to sustain a conviction.

*Appeal from County Court, Oklahoma County;*
*William H. Zwick, Judge.*

Charles Patterson was convicted of a violation of the prohibitory liquor law, and he appeals. Reversed, and cause remanded.

*S. H. Harris, J. I. Howard,* and *A. M. Beets,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J.  The plaintiff in error prosecutes this appeal from a judgment of the county court of Oklahoma county, sentencing him to be confined in the county jail for six months and to pay a fine of $100 for maintaining a public nuisance.

The information in substance charges: That on the 1st day of January, 1917, thence continuously up to and including the 3rd day of April, 1917, in Oklahoma county, the defendant did then and there willfully and unlawfully keep and maintain a place at the corner of Reno and Pennsylvania avenues, Oklahoma City, wherein spirituous, vinous, and malt liquors, to wit, beer and whisky, were by said defendant possessed and kept with the intent to sell, barter, give away, and otherwise furnish the same, and at which place during said period of time, at the procurement and solicitation of the said defendant, numerous and divers persons in large numbers did resort and congregate there for the purpose of drinking said beer and whisky, all thereof to the common nuisance of the public.

The principal contention on the part of the defendant is that the evidence is insufficient to sustain the verdict of conviction.

The testimony on the part of the state was as follows:

E. J. Helm, the first witness for the state, testified that he was a deputy sheriff, and knew the defendant and the place where he lived on the southwest corner of Reno and Pennsylvania; that with deputy sheriffs Farris and Nash he raided the place on the 2d day of February, 1918; that a fellow named Duchardt drove up with three sacks of beer in a wagon; that they found several sacks of beer, in a trench, about a barrel, found something like four bottles of whisky in a woodpile, found a case in a little house where some fellow slept, and found a part of a quart of whisky there, also found a barrel buried lengthwise in the ground with a square hole in the top, covered with straw, and some beer was in the barrel. Was acquainted with the general reputation of the place as being a place where intoxicating liquor was kept for the purpose of selling the same, and where persons resorted for the purpose of drinking liquor, and it was bad; that he had never heard the neighbors say anything about reputation of the place; that he had never made a raid on Patterson's place prior to the date testified to, but did make a raid one time after and did not find anything.

C. B. Farris testified: That he went with Officers Helm and Nash to the defendant's place, and "we found a little beer and whisky, that to make a long story short we dug up about a barrel of beer. The defendant at the time was building a barn and came over and said the beer in the wagon belonged to his mother." Asked if he knew the general reputation of the place as to being a place where liquor was kept and stored for the purpose of sale and where people congregated and resorted to drink the same, he answered:

"We heard it had that reputation—that is the reason we went out there—and it would be bad, because we found whisky and beer there."

That the sacks in which the beer was, looked like they had been buried for some time. This was the only raid he ever made on the defendant's place.

W. M. N'ash, deputy sheriff, testified: That he went with Officers Helm and Farris to the defendant's place about the 3d day of April. That they found a farm hand with a wagon and team, and found three or four sacks of beer in the wagon. The defendant came up and said the fellow was going to drive with the beer over to his mother's. They found three or four sacks of beer in a ditch, and found three quarts of whisky in a woodpile, and in the little house they found a case unbroken, "but don't know what was in it; it was marked intoxicating liquor. We went in the house and didn't find a thing; did not know the general reputation of the place."

On behalf of the defendant, Mrs. Dora Finley testified that she was his sister, and the beer in the wagon belonged to their mother, who was living temporarily at 608 Fifth street; and she went with Frank Duchardt to the station to get it the day her brother was arrested, and produced the shipment receipt for the beer, which she received at the freight office; that she was at the defendant's place nearly every week, and would often stay there overnight; never saw persons congregated there, and never saw any one drinking around there; that old man Carpenter lived there in the little house, and he had spells of heart trouble, and he had whisky there, and would drink it whenever he could get it.

H. C. Carpenter testified that he was 68 years old; engaged in the real estate business; but lived at the de-

fendant's place, and occupied the little house out in the yard; that he had the beer and whisky out there that the officers found, and had a case containing four quarts of wine in the little house; that he put the barrel in the ground and that he kept beer and ice in it; that he buried the sacks of beer, and would bring it in and put a dozen or a half dozen bottles in the barrel; that defendant did not order or own any part of the whisky, beer, or wine, or have anything to do with it. Had known Mrs. Patterson for 20 years, and that he hid this beer and whisky because she was very much opposed to the use of beer and whisky, and if she knew he had it she would not have let him keep it about the place; never saw persons congregating around there, and never knew of the defendant having, selling, giving away or otherwise furnishing liquor of any kind to any person.

Mrs. Belle Patterson, the defendant's wife, testified that they lived on her mother's place, a 10-acre tract, near the corner of Reno and Pennsylvania; that she never saw people coming to the place for the purpose of drinking beer and whisky, and never saw her husband sell beer or whisky, or have any beer or whisky there; that Mr. Carpenter occupied the little house south of their home; that she did not know for sure that Carpenter had any whisky there until it was found by the officers; that she had known Mr. Carpenter for a long time; never saw him drinking, but heard that he did; that she was very much opposed to liquor in all forms, and never used it herself; that she did know about some beer out in the barn for Mr. Patterson's mother, but would not permit it in the house; that her husband was not a drinking man, and she never saw him under the influence of liquor.

James Trippett testified that he lived in the first house south of the defendant more than a year; that he was home every night and never saw anybody at the defendant's place drinking intoxicating liquors; that he never heard of the place having a reputation of being a place where intoxicating liquors were sold.

Joe Winto testified that he lived within 250 feet of the defendant's place, and worked at the city pumping station; went to work at 11:30; came home at 11:30, changing every two weeks; that he never saw persons congregating around Patterson's house at night; never heard of Patterson's place having a bad reputation; never heard any discussion among the neighbors, although he had been living there for 3 years; never saw any indications around Patterson's place that they were selling whisky and beer there; not related to Patterson and had no interest in the case.

The defendant, Patterson, as a witness in his own behalf, testified that he had been living there two years with his wife and two children; that he was a farmer and contractor, farming about 35 acres in addition to his place; that Mr. Carpenter during the time mentioned lived in the little house about 60 feet from his residence, both within the same inclosure; saw the officers stop Duchardt, the hired man; that the beer in the wagon was his mother's; that Duchardt was moving her that day; that he told the officers at the time where the beer was going; that the beer found by the officers belonged to Carpenter; that he had nothing to do with putting the barrel in the ground, or keeping beer in it; did not know about the whisky Carpenter claimed being in the woodpile; that he had no whisky or beer about

the place, and never solicited any person to come there and drink intoxicating liquor, and no people even came there to drink intoxicating liquor at any time.

In rebuttal the record of the Wells Fargo Express Company was introduced, showing that in the month of February there was one shipment of four quarts of liquor to Henry Carpenter, but no shipments of beer, and showing that no shipments of intoxicating liquor were received by the defendant.

At the close of the evidence the defendant moved the court to instruct the jury to return a verdict of not guilty, for the reason that the evidence was not sufficient to sustain a conviction, which the court overruled and allowed exception.

This conviction was obtained under that part of section 13, c. 70, Laws 1910-11, which reads:

"All places where any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; * * * is manufactured, sold, bartered, given away or otherwise furnished in violation of any provision of this act; and all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor. are hereby declared to be public nuisances, * * * and the owner or keeper thereof shall, upon conviction, be adjudged guilty of maintaining a public nuisance, and shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars, and by imprisonment in the county jail not less than thirty days nor more than six months."

The charge of the court required the jury to find from the evidence beyond a reasonable doubt that the defendant maintained a public nuisance at the place named from Jan-

uary 1, 1917, continuously to and including the 3d day of April, 1917, where intoxicating liquor was kept and possessed by said defendant during said period of time with the intention of selling, bartering, and giving away the same in violation of law, and at which place during the said period of time, at the procurement and solicitation of said defendant, numerous and divers persons congregated for the purpose of drinking said liquor.

Where there is evidence to support the verdict this court will not pass upon its weight or sufficiency in order to determine whether or not the defendant was guilty as charged. However, there must be evidence tending to support the essential allegations of the information. In this case there is no direct evidence tending to show possession of intoxicating liquor. The facts relied upon by the state to show the possession are circumstantial. The defendant denied possession, and another person claimed ownership and possession of the liquors seized by the officers.

Assuming that the evidence on the part of the state showed possession by the defendant of the liquors seized, there was no evidence tending to show that the defendant intended to sell or dispose of the same as charged in the information, and the evidence wholly fails to show that persons had congregated and resorted to the defendant's place for the purpose of drinking such liquor. In the brief for the state it is said:

"The evidence, attempting to show that persons congregated and resorted on the defendant's premises for the purpose of drinking such liquors, wholly fails. The evidence as to the general reputation of the premises is without force."

Because the evidence is insufficient to sustain the conviction, the judgment of the lower court is reversed, and the cause remanded.

ARMSTRONG and MATSON, JJ., concur.