### WILLIAM BARNGROVER v. STATE.

No. A-4525.   Opinion Filed Sept. 20, 1924.

(229 Pac. 304.)

(Syllabus.)

1.    **Intoxicating Liquors—Evidence of Reputation of Place—Maintaining Liquor Nuisance.** In a prosecution in which the charge is made that the defendant kept and maintained "a public nuisance at his home and premises (describing its location), the same being a place where spirituous liquors are bartered, sold, and given away," it is competent to introduce evidence of the general reputation of the place as being a place where such liquor is kept or distributed in violation of law; but such evidence of reputation alone will not support a conviction. Evidence of such reputation is competent only to corroborate some direct testimony indicating that the place is a public nuisance, as charged.

2.    **Same—Indefinite Proof of Possession of Liquor at Private Residence Insufficient.** Where the charge is the keeping and maintaining of a public place where intoxicating liquors are being sold, indefinite proof of mere possession of an undetermined quantity at a private residence is not sufficient to sustain the charge without some direct proof indicating that it was a public place or that liquor had there been sold in violation of law.

     (a)   The direct evidence adduced on this point held insufficient.

Matson, P. J., dissenting.

Appeal from County Court, Payne County; Raymond H. Moore, Judge.

William Barngrover was convicted of maintaining a public nuisance, and he appeals. Reversed and remanded.

John P. Hickam, for plaintiff in error.

The Attorney General and G. B. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.   William Barngrover, plaintiff in error here, defendant in the trial court, was, in the county court of Payne county, on the 18th of October, 1922, convicted of keeping and maintaining a public nuisance, where spirituous liquors were bartered, sold, and given away, with his punishment fixed at confinement in the county jail for a period of thirty days and to pay a fine of $50.

The defendant urges that the conviction should be set aside because the evidence did not support the verdict; that the conviction is based upon evidence obtained by the search of the private residence of the defendant, without any showing that this residence was a public place, and without proof that spirituous liquor was there bartered, sold, or given away, excepting only the testimony of the raiding officers, who said that the place had the reputation of being a place where intoxicating liquors were sold.

The five officers who made the raid were the only witnesses for the state. In making the raid they procured evidence, largely circumstantial, that the defendant had had possession of an undetermined quantity of whisky, but proof of possession is only one of the elements of the offense of keeping and maintaining a public nuisance. To sustain a conviction on that charge there must be proof tending to show that the place was a place of public resort where intoxicating liquors were consumed or from which distribution was made. There was no proof whatever that this residence was a place of public resort and no positive proof that any person had procured intoxicating liquor there, excepting the testimony of a policeman who, in reply to the question, "Did you watch that place on the 20th day of May?" said, "I watched old man Feaster. He was headed towards Barngrover's, going down that way, and I was watching for him to come back. He went to Barngrover's and turned east, and in a little bit he came back." This policeman then testified that he arrested Feaster with a bottle of whisky in his possession; that he took him over to the police station, and then, with other officers, returned and raided the Barngrover residence.

This residence was in the vicinity of other residences, near stores and shops, and this officer did not see Feaster enter the residence or come out of it, and did not know positively where Feaster got the whisky.

The raiding officers said the defendant did not at once respond to their demand for admittance; that they heard moving footsteps inside the house and the sound of breaking glass. After an entrance was effected, they found in the upper story of the residence a quantity of baled hay and some loose hay on the floor; they found that some of this hay was damp and gave off an odor of whisky; and they

found a broken bottle containing a small quantity of whisky. They also found fragments of two glass containers of one-gallon capacity, and a hammer nearby, also a funnel.

The defendant testified that this place was his residence, occupied by the five members of his family; that he was and had been employed steadily in lucrative positions by oil companies; that the upstairs portion of his residence consisted of two rooms which were used as storerooms and play-rooms for the children; that there was some junk—odds and ends, including some bottles—in this upstairs part of the house when he moved in; that he did not place the bottles there and did not break them, and knew nothing about any funnel being there. Defendant denied that he ever had whisky in this upstairs part of the house.

Under this state of the evidence, even though the jury found that there was or had been whisky in the house, it does not necessarily follow that the defendant had it there for the purpose of sale or for any illegal purpose constituting a necessary element of maintaining a public nuisance. None of the officers actually knew of anything indicating that whisky was being sold there, except that the place bore such reputation.

A portion of the statute upon which this prosecution was based (section 7022, Comp. Stat. 1921), is as follows:

"All places where any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor; or any malt liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States; is manufactured, sold, bartered, given away or otherwise

furnished in violation of any provision of this act; and all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances, and upon the judgment of any court of record finding such place to be a nuisance under this section, the sheriff, his deputy, or undersheriff, or any constable of the proper county, or marshal or police of any city where the same is located, shall be directed to shut up and abate such place by taking possession thereof and destroying all liquors found therein, the keeping or sale of which is prohibited by this act, together with all signs, screens, bars, bottles, glasses, and other property used in keeping and maintaining said nuisance; and the owner or keeper thereof shall, upon conviction, be adjudged guilty of maintaining a public nuisance, and shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars, and by imprisonment in the county jail not less than thirty days nor more than six months.''

In numerous cases this court has held that, where one is charged with keeping a place in such manner as to constitute a public nuisance, its general reputation as such may be shown. Hurst v. State, 25 Okla. Cr. 102, 219 Pac. 151; Friedman v. State, 19 Okla. Cr. 124, 198 Pac. 350; Bland v. State, 18 Okla. Cr. 514, 196 Pac. 732; Tindell v. State, 18 Okla. Cr. 721, 196 Pac. 555; Felas v. State, 16 Okla. Cr. 631, 185 Pac. 839; Sibenaler v. State, 16 Okla. Cr. 576, 185 Pac. 448; Davis v. State, 16 Okla. Cr. 372, 182 Pac. 908; Dunbar v. State, 15 Okla. Cr. 513, 178 Pac. 699; Ward v. State, 15 Okla. Cr. 150, 175 Pac. 557; Cameron v. State., 13 Okla. Cr. 692, 167 Pac. 339; Caffee v. State, 11 Okla. Cr. 263, 145 Pac. 499.

In each of the cases just cited there was evidence of a positive character indicating that the place was a place of public resort, or that it contained bar fixtures or other para-

phernalia indicating an illegal intent to sell or dispose of liquor, or proof that the place was frequented by persons who habitually violated the liquor or gambling laws of the state.

The corpus delicti cannot be proven by reputation alone. It would be .a dangerous and unwarranted assumption of authority for this court by judicial construction to read into this public nuisance statute a proviso that the keeping or maintaining of a public place where liquors are sold or consumed could be established by reputation alone. The true character and the reputation of a place might be quite different. A bad reputation might be founded on mere rumor. Insidious slanderers or tale-bearers might give to a person or place a bad reputation. entirely undeserved. Reputation alone, without some evidence of a positive nature, should not be held sufficient to establish a specific fact or condition.

Quoting from the state's brief in Patterson v. State, 17 Okla. Cr. 495, 190 Pac. 271, this court said:

"The evidence, attempting to show that persons congregated and resorted on the defendant's premises for the purpose of drinking such liquors, wholly fails. The evidence as to the general reputation of the premises is without force."

In Francis v. State, 16 Okla. Cr. 543, 185 Pac. 126, this court said:

"A legal conviction for keeping a bawdyhouse cannot be had upon evidence alone that the house in question has the general reputation [of being a place] where lewd and lascivious persons of both sexes congregate for the purpose of unlawful sexual intercourse."

And in the case of Putman v. State, 9 Okla. Cr. 535, 132 Pac. 916, 46 L. R. A. (N. S.) 593, the first syllabus reads:

"In prosecutions for keeping a house of ill fame, it is competent to introduce evidence of the general reputation of the house in the neighborhood in which it is situated as to its being a place where lewd and lascivious persons of both sexes congregate for the purpose of unlawful cohabitation or sexual intercourse. But such evidence alone will not support a verdict. It must be corroborated by some other fact or circumstance tending to prove the character of the house."

Unless the state on another trial of this cause can produce some direct evidence tending to show that the residence of defendant was a place of public resort, or that it was a place where intoxicating liquor was kept for sale, this prosecution should abate.

The judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion.

DOYLE, J., concurs.

MATSON, P. J. I dissent from the conclusion reached by the majority of the court in this case. The statute makes "all places where any intoxicating liquors are kept or possessed by any person in violation of any provision of the act" a public nuisance. While the record is not definite as to the amount of whisky discovered by the searching officers at the defendant's residence, a quantity of this whisky was introduced in evidence. How much also is not shown by the record. Whether a quantity sufficient to be prima facie evidence of an intent to violate the law is not disclosed. In this court the burden is on the appellant to bring before the court enough of the record to enable the court to pass intelligently upon all the questions presented in the appeal. If the appellant does not do so, all presumptions will be resolved against him on appeal. There is no presumption

of innocence after a verdict of guilty. Jones v. State, 10 Okla. Cr. 216, 136 Pac. 182, 137 Pac. 122; Edwards v. State, 9 Okla. Cr. 306, 131 Pac. 956; Coleman v. State, 6 Okla. Cr. 271, 118 Pac. 594; Starr v. State, 9 Okla. Cr. 210, 131 Pac. 543; Johnson v. State, 21 Okla. Cr. 17, 204 Pac. 311.

The appellant as a witness in the trial court testified that he did not know that this whisky was in his residence. He did not claim he had it there for his own use. So the jury, in my opinion, were not justified in finding that, if the whisky was there and in the possession of the appellant, it was there for a lawful purpose.

Appellant's conduct at the time of the search clearly indicates to my mind a guilty conscience. When the officers were outside of his residence, and had made known their presence there, the appellant was on the lower floor of the residence. He immediately went up stairs. This whisky was located in the second story. The officers heard the breaking of glass, and when they went into the house and up stairs they found two glass gallon bottles and two quart bottles which had evidently contained whisky, also some baled hay, a hammer, and a funnel. These bottles had been broken, and the broken glass was on the floor, and recently spilled whisky on the floor, and the hay smelled strongly of whisky, and a quantity of whisky was found in some of the broken pieces of bottle. The defendant admits that he had been living in that house five months at the time the search was made. He admits that he had put the hay in the room in which the whisky was found. However, he denied that he knew anything about the whisky being in that room. It does not stand to reason that a man of ordinary intelligence could live in a house for five months with two five-gallon bottles of whisky and two quart bottles in a room in his house, unconcealed, without his having gained some

knowledge of its presence there. This conclusion is strengthened by the fact that he himself placed the bales of hay in that same room, and that the bales of hay and the whisky were close together cannot be successfully denied under the proof in this case. That the bottles had been recently broken at the time of the raid is evidenced by the fact that there was a considerable quantity of whisky on the floor of the room, and that the hay smelled strongly of whisky. Alcohol evaporates rapidly when exposed to the air, and the smell soon disappears. This is a matter of common knowledge which the jury undoubtedly considered. The circumstances of the finding of a funnel in the room where this whisky was discovered indicates that whoever had the whisky was using the funnel for the purpose of filling smaller receptacles from the five-gallon bottles.

There is also some circumstantial evidence in the record from which the jury might have inferred that the appellant made a sale of a half pint of whisky to a man by the name of Feaster. Feaster was not produced as a witness by either side. The record shows that he left that community shortly after this occurrence and had not been heard of since. The state should have obtained his presence, perhaps, by having arrested him for unlawful conveyance of intoxicating liquor, but the fact that he was not produced by either party, in my opinion, creates no greater presumption one way than the other. All together, the circumstances are consistent with the inference of guilt.

No question is raised in this appeal as to the validity of the search. There is evidence that the place where this liquor was found had the general reputation of being a place where intoxicating liquors were kept for sale and sold.

I do not think this court should substitute its judgment for that of the jury and determine what the proper infer-

ences are from the circumstantial evidence, and what weight should be given to evidence that is conflicting.

It has always been the rule of this court that before a conviction will be reversed upon the ground that the verdict is contrary to the evidence this court must find that there is no testimony in the record from which the jury could rationally conclude that the appellant was guilty. Ostendorf v. State, 8 Okla. Cr. 362, 128 Pac. 143; Caple v. State, 3 Okla. Cr. 621, 105 Pac. 681; Bishop v. State, 9 Okla. Cr. 175, 130 Pac. 1173.

This conviction is not based solely on proof of the general reputation of the appellant's place of residence as being a place where intoxicating liquors were sold.