## LESTER DAVIS v. STATE.

No. A-9682.   Dec. 11, 1940.
(108 P. 2d 200.)

Wayne E. Wheeling, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Lester Davis, was charged in the common pleas court of Oklahoma county with the offense of maintaining and operating a public nuisance, was tried, convicted, and sentenced to serve a term of 60 days in the county jail and pay a fine of $100, and has appealed to this court.

The defendant makes many assignments of error; but under the view which we take of this case, it is only necessary to consider one of said assignments. The defendant contends that the evidence of the state is wholly insufficient to establish the charge set forth in the information.

The state offered as witnesses four officers, to wit: Bob Prince, W. I. Eads, Art Nemechek, and Clint Johnson.

Their testimony showed that the defendant operated a beer place and dance hall, known as the Silver Dollar Night Club. On October 28, 1938, Bob Prince, a deputy sheriff, in company with two women, went to this night club. No other customers were present. Prince put a nickel in the phonograph, and his party ordered three whisky sours from the waitress, which were served to them at a price of 25 cents for each drink. Prince tasted the whisky sour, but did not drink any of it. He was not asked whether it contained liquor.

About ten or fifteen minutes after Prince had entered the place, Officers Eads, Nemechek, and Johnson came in.

Eads testified the drinks on Prince's table smelled like liquor; that they found no liquor at the bar, but did find some empty bottles that smelled as if they had contained liquor. Defendant was asleep in his living quarters. A bottle was found in a hole outside the building, which had the label of some kind of a foreign brand of liquor on it, and was partially filled with this liquid.

Officer Nemechek testified that they found no liquor at the bar, but that they found lemons, limes, sugar, and mixer, and that the bartender had poured out the alcohol or whisky or whatever it was that he had in the milk bottle. Nemechek poured the three whisky sours in a milk bottle which was offered in evidence. There were only one waitress, a man behind the bar tending the bar, a porter, and two or three customers at the club when they arrived. That he did not know whether the liquid which he poured into the milk bottle was a whisky sour or what it was, except that Bob Prince told him that he had ordered three whisky sours.

Officer Johnson testified that the bartender poured alcohol out of a milk bottle before he could get behind the bar. He identified the exhibits which were offered in evidence by the state, and which included a quart bottle about half full of alleged whisky sour, an empty whisky bottle, a gin bottle with approximately a Coca-Cola glass of liquid in it, a quarter of a pint of Tequila, and three glasses. The witness testified that none of the liquids had ever been analyzed; and when handed the so-called whisky sours, he testified that it was hard to say whether or not it had whisky in it, but that there was some trace of alcohol.

Each of the officers attempted to testify as to the bad reputation of the defendant's place, but their testimony was based upon what the sheriff had told them immediately prior to the raid; and all testimony concerning the reputation of the defendant's place was stricken from the consideration of the jury.

Two of the officers testified that the defendant, when being brought back to town in their custody after his arrest the night of the raid, in response to their question: "We didn't think you were going to open up a drinking

joint?" replied: "Well, I knew it was against the law, and I would get caught sooner or later."

However, there is a conflict in the testimony of the officers on this question, as Officer Eads testified that he had a conversation with the defendant on the way to town, as follows:

"Q. Did you have a conversation relative to these drinks that had been served? A. Well, of course, he was asleep and didn't know about that particular part and we talked to him on the way in and he said that he said that he sold drinks and we asked him 'in violation of law' and he said 'No,' and that is about all he said."

The defendant testified in his own behalf that he did not make any statement to the officers that he was violating the law, and that he had only been operating the Silver Dollar Night Club about two months. That he did not permit his patrons to drink whisky there when he knew it; that drinks were not sold at his place which contained more than 3.2% alcohol; that the bottle of Tequila which the officers found came from his own room.

Walter Ainslie, who owned the phonograph at the night club, testified that he had occasion to be at the place often, and that he had never seen intoxicating liquor sold or consumed there.

The charging part of the information reads as follows:

"Lester Davis, whose more full and correct name is to your informant unknown, then and there being did then and there willfully, unlawfully and wrongfully commit the crime of maintaining and operating a public nuisance in the manner and form as follows to wit: That is to say the said defendant in the county and state aforesaid, then and there being, did, then and there, willfully, unlawfully, and wrongfully maintain and operate a certain one story building commonly known as the Silver Dollar Night Club located at Northwest 59th and North May Avenue adja-

cent to Oklahoma City, said county and state, where intoxicating liquor, to wit: whisky was kept, bartered, sold and given away to divers persons and where divers persons unknown were permitted to congregate for the purpose of buying, receiving and drinking the said intoxicating liquor, all to the common nuisance of the public."

This action is based upon that part of section 2616, O. S. 1931, 37 Okla. St. Ann. § 78, which declares:

"And all places where any such liquor is kept or possessed by any person in violation of any provision of this act; and all places where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances."

The sole question for us to determine is whether the state proved the necessary elements to sustain the charge.

In the case of Bunch v. State, 53 Okla. Cr. 430, 12 P. 2d 704, which case was followed by the opinion of this court in the case of Tarbutton v. State, 57 Okla. Cr. 442, 48 P. 2d 877, we held it would be necessary for the state, in order to sustain a charge against a defendant for maintaining or operating a public whisky nuisance, based upon the above portion of section 2616, O. S. 1931, 37 Okla. St. Ann. § 73, supra, to show:

1.  a. Evidence of a positive character that the place was a place of public resort, or

b. That it contained bar fixtures (exclusive of apparatus for selling 3.2% beer) or other paraphernalia indicating an intention to sell or dispose of liquor, or

c. Proof that the place was frequented by persons who habitually violated the liquor and gambling laws of the state, or

d. Proof of sale or sales of intoxicating liquor at or near the time of the charge, in addition to

2. Proof of general reputation.

The state, in order to try to comply with these requisites, evidently relied upon the proof of sales of intoxicating liquor the night of the raid. There is no proof in the record that the alleged whisky sours which were sold were in fact intoxicating or that any of the other liquids which were found on that occasion were intoxicating.

This court will not take judicial notice of the intoxicating character of a beverage which is not made by any standard formula, is not generally offered for sale in this jurisdiction, and which has not become so well known as to have a general reputation as to the intoxicating character. If the beverage is not what is generally known as one of the spirituous, vinous, or malt liquors, the state must introduce evidence either of its intoxicating effect, or that it contained more than 3.2% alcohol measured by weight. Richardson v. State, 21 Okla. Cr. 393, 208 P. 1052.

A conviction cannot be sustained when the testimony of the witnesses for the state shows that they did not know whether the beverage was intoxicating. There must be affirmative proof establishing this fact. Horn v. State, 31 Okla. Cr. 284, 238 P. 233.

The state evidently relies upon the alleged confession of the defendant to the officers that he knew what he was doing was against the law as an admission of guilt on the part of the defendant that he was selling intoxicating liquor, which confession, together with the whisky sours which were sold, was sufficient to prove a sale of intoxicating liquor.

Our court in the case of Elijah Robinson v. State, 71 Okla. Cr. 75, 108 P. 2d 196, has ruled against this contention of the prosecution. In that case, we held that the corpus delicti could not be proven by extrajudicial confession of the defendant. Judge Doyle in that case re-

views the authorities upon this point, and the same are overwhelmingly against the theory of the state.

This court has held in Wilkerson v. State, 9 Okla. Cr. 662, 132 P. 1120, that the character of the place in a nuisance charge is an element of the offense committed, for it is an advertisement of the owner, and assists him in committing the offense, and is a source of revenue to him, and the offense is continuous; but where a person is charged with an offense which is based upon one specific transaction, the question of character does not become an element of the offense, and, therefore, the general reputation of the defendant in such a case is not admissible. This is the line of demarcation between the cases in which reputation is admissible and inadmissible.

In Frazier v. State, 31 Okla. Cr. 324, 239 P. 185, we held that where a defendant is charged with maintaining a place where liquor is kept with the intent to violate the prohibitory law, the general reputation of such place, as a place where intoxicating liquors are kept for sale, is admissible on the question of intent. See, also, Cameron v. State, 13 Okla. Cr. 692, 167 P. 339; Sibenaler v. State, 16 Okla. Cr. 576, 185 P. 448.

The officers testified that the reputation of the defendant's place of business, as to being a place where people congregate for the purpose of buying, selling, and drinking intoxicating liquor was bad; but upon cross-examination the officers admitted that their information was based upon a statement made to them by the sheriff; and the court correctly struck all of their testimony regarding the reputation of the place from the consideration of the jury. No other effort was made by the state to prove the general reputation, other than this testimony; and we accordingly find that there is no evidence before the jury of the general reputation of the premises.

In Jones v. State, 23 Okla. Cr. 9, 211 P. 1075, the judgment of the trial court was reversed because there was neither evidence that the place had a general reputation of being a place where intoxicating liquors were sold or kept for sale nor evidence that divers persons were permitted to congregate there for the purpose of drinking intoxicating liquors. The court stated that the proof of possession of a small quantity of liquor on one occasion in a public place was not sufficient to support a nuisance conviction in the absence of proof of the general reputation of the place as being one where intoxicating liquors were sold, or in the absence of proof of sales of such liquors having been made on the premises.

In Hurst v. State, 25 Okla. Cr. 102, 219 P. 151, 152, this court stated:

"In a number of cases it has been held by this court that, where a defendant is on trial for keeping a house of ill fame, the fame or reputation of the house becomes an issue, or, where one is charged with maintaining a place where intoxicating liquors are sold, amounting to a nuisance, the character of the house or place kept is an element of the offense."

In the Barngrover v. State, 28 Okla. Cr. 22, 229 P. 301, 304, it was held that in a whisky nuisance charge evidence of general reputation of the place as being a place where liquor was kept or distributed in violation of the law was competent, but that evidence of such reputation was competent only to corroborate such direct testimony indicating that the place was a public nuisance as charged.

In Taylor v. State, 37 Okla. Cr. 23, 255 P. 714, 715, this court said:

"Prosecuting officers seem to be in confusion over the admissibility of this evidence. In a case where defendant is charged with maintaining a place where intoxicating liquors are dispensed, reputation of the place is admissible.

\* \* \* But where he is charged with having the possession of intoxicating liquors with intent to sell, the reputation of his home or premises is generally inadmissible, unless the place be one resorted to by the public; such evidence is then admissible on the question of intent."

From the foregoing, it can be readily seen that the state has wholly failed to prove a sale of drinks which were in fact intoxicating; they have wholly failed to prove the possession of liquors which were in fact intoxicating; and no general reputation of the place, as being a place where people congregate for the purpose of buying, selling, and drinking intoxicating liquors is shown.

In the cases of Bunch v. State, supra, and Tarbutton v. State, supra, this court had before it nuisance convictions wherein the actual evidence was much stronger than in the case at bar; however, in each of those cases the conviction was reversed because of the insufficiency of the evidence.

After a careful consideration of this case, we are of the opinion that the facts are wholly insufficient to support the charge, and that the case should be reversed with instructions to the trial court to discharge the defendant.

It is so ordered.

DOYLE, P. J., and BAREFOOT, J., concur.