TERRITORY OF OKLAHOMA, *ex rel* CITY OF OKLAHOMA, V. J. M. ROBERTSON AND HOWARD HAYS.

(Filed September 5, 1907.)

(92 Pac. 144.)

1. INTOXICATING LIQUORS—Licenses—Refusal by City. Where a dealer in intoxicating liquors has obtained a county license authorizing him to sell such liquors within a city of the first class, such city has no power to refuse a city license to such person upon presentation of his county license, filing his bond with the county clerk, and paying to the city treasurer the amount required by the city ordinance for such license.

2. SAME—Qualifications of Licensee—City Cannot Prescribe Additional. The qualifications of one who has obtained a county license has been determined, and the mayor and city council of a city of the first class have no power to by ordinance prescribe additional qualifications.

3. SAME—Municipal Regulation of Sale. The mayor and city council of a city of the first class may by ordinance regulate the places where intoxicating liquors are sold and may designate the portions of such city where saloons may be conducted and where they may not, and an applicant for county license in such city must take notice of such ordinance when properly enacted and published.

4.  **SAME—Unlawful Sale—Nuisance.** The unlawful sale of intoxicating liquors does not per se constitute the place where such liquors are sold a public nuisance. The character of the place must depend upon the special facts, which must be specifically averred and proved.

5.  **SAME—Abatement and Injunction.** There is no statute in this territory authorizing a court to proceed by injunction to restrain the unlawful sale of intoxicating liquors, and a court of equity' will not interfere upon the bare fact alone that the place where liquors are sold is unlicensed.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

Affirmed.

*R. G. Hays, Co. Att'y,* and *G. A. Paul, City Att'y,* for plaintiff in error.

*Ledru Guthrie,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The city of Oklahoma City brought this action in the name of the territory of Oklahoma, as relator, against J. M. Robertson and Howard Hays, the defendants in error, to enjoin them from conducting a saloon for the sale of intoxicating liquors within the corporate limits of the city. On May 2, 1905, the mayor and city council adopted Ordinance No. 484, entitled "An ordinance regulating the sale of liquors and providing penalties, and repealing Ordinance No. 260 of said city." This ordinance prohibits the sale of intoxicating liquors within the city by any person without first having procured a license from the mayor and city council and paid therefor into the city treasury the sum of five hundred dollars per year, in advance. Section 2 of the ordinance is as follows: "It shall be necessary for each person applying to the mayor and city council of said city for a license to sell liquors hereinbefore mentioned, to present to said mayor and city council the license issued, or a certified copy thereof by the county commissioners of said county to the applicant, together also

with a petition signed by the owners of two-thirds of the lots within the one-half block running to the main alley in which the applicant intends to engage in business, setting out that the applicant is a person of good moral character, which place must be fully described by the lot and block number, the number being set out in said petition. Provided, that when any lot or lots are owned by two or more persons jointly, each person so interested shall be entitled to sign for his proportionate part of said lot or lots, and said mayor and council, upon being satisfied that such license has been issued to the applicant, and that he or she is a person of good moral character, and that the signatures of those whose names are signed thereto represent two-thirds of the lots on the side of the streets, running to the main alley, of the one-half block in which said business is to be carried on, may grant to him or her a license, by a majority vote of said council, to sell such liquors upon the payment of the necessary license money as required by section one of this ordinance. Provided, that no license shall ever be granted by said mayor and city council to any person to sell liquor within fifty feet of any church, or one hundred yards of any public school building within the city limits of said city."

Section 3 provides penalties for violation of this ordinance by fine and imprisonment.

The defendants in error made their application to the county authorities and procured their county license, and then paid to the city clerk the sum of $500 and proceeded to engage in the liquor business without further effort to comply with this ordinance. The city refused to issue them a license until they should present their petition as required in the ordinance, and hence no city license was issued to them. This action is brought to enjoin them from conducting said business. It is alleged that they are selling intoxicating liquors in violation of the ordinance above set out, and the relief is asked upon the grounds that it will avoid a multiplicity of law suits. There are no facts set out in the petition showing equitable grounds of interference, except what we

have stated. The district judge granted a restraining order until a hearing was had, when he dissolved the restraining order and refused the application for a temporary injunction. From this order the appeal is taken.

The plaintiff in error contends that under section 388, Wilson's Statutes, the city has power to prescribe the conditions upon which license may issue. It is there provided: "The city council shall have power to restrain, prohibit and suppress tippling shops, billiard tables, bowling alleys, houses of prostitution and other disorderly houses and ' practices, games and gambling houses, desecrations of the Sabbath day, commonly called Sunday, and all kinds of public indecencies. No license shall ever be granted for any house of prostitution, or for any gambling house, gambling device, game of chance, or any disorderly house or practice * * * " This statute was adopted from the state of Kansas and had been construed by the supreme court of that state in an opinion by that eminent jurist, Mr. Justice Brewer, long before we adopted it (*City of Emporia v. Volmer*, 12 Kan. 622), and we adopted it with the construction placed upon it by that state. After quoting the section of the statute, which is identical with section 388 of Wilson's Statutes 1903, the court says: "We think this gives ample authority (to license). The word 'restrain' it not synonymous with 'prohibit' or 'suppress'. It does not contemplate an absolute destruction of the business, but rather placing it within bounds. From the last clause, which prohibits a license to houses of prostitution, etc., it seems evident that the legislature contemplated that the first granted power to license."

This same question has been presented to the courts of other states, and with like ruling. *City of St. Louis v. Smith*, 2 Mo. 113; *Trustees of Clintonville v. Keeting,* 4 Denio (N. Y.) 341; *Town of Mt. Carmel v. Wabash Co.*, 50 Ill. 69. In the opinion in this last case the court, on page 73, uses this language: "The power is to tax, restrain and suppress the sale of liquors; and under the power to tax, we think it was intended to confer the power to

license tippling houses, but if this were not so, the power to restrain manifestly authorizes the city to grant such license. To restrain, the city would be compelled to adopt ordinances for the purpose, and by that means bring drinking houses under the necessity of procuring license and paying therefor such sums as might be required. Such a requirement would be a restraint reasonable and in accordance with the restraints imposed then and now on the traffic, and such restraint was doubtless in the contemplation of the general assembly when this charter was granted. It is, no doubt, true that the city was empowered to resort to other means of restraint, such as requiring such houses to be orderly, and in other respects to conform to such ordinances as might be adopted to properly restrain the business; but the fact that they had othter powers conferred for the purpose in nowise prevented the city from exercising the power to restrain the general free sale of liquor by requiring that a license should be obtained before it could be sold."

A "tippling house" is a place where intoxicating liquors are sold and drank, where people tipple or drink intoxicants at the place. The drinks may be either sold or given away. *Werner v. Washington,* 29 Fed. Cases, 705; *Lessburg v. Putman,* 103 Ga. 110; *Woods v. Commonwealth,* 40 Ky. 74; *Yankton v. Douglass,* 8 S. D. 441; *Morrison v. Commonwealth,* 37 Ky. 218; *Patten v. Centralia,* 47 Ill. 370; *Harris v. People,* 21 Colo. 95, 39 Pac. 1084; *Emporia v. Wolmer,* 12 Kan. 622. And in the last case it is said: "That idea of counsel for the defendant that a tippling shop is technically 'a disorderly house, a nuisance,' and that therefore some facts must be shown from which disorderly conduct could at least be inferred, does not seem to us correct. Both terms 'tippling shop,' and 'disorderly house' have in the law well settled and well defined meanings, and those meanings are not identical, nor is either necessarily included in the other."

It would seem from these definitions that a "tippling shop" is the modern common saloon, where liquors are kept and sold as a

beverage and drank at the bar, and it ·may be either a licensed or an unlicensed saloon, and that under the power granted in section 388, *supra,* the mayor and council may license the business, may prohibit the sale by those not licensed, and may suppress unlawful sales or disorderly houses where it is sold or kept for sale. But, in licensing a dealer, sec. 388 must be constructed in conjunction with section 3240 of the liquor law. This law was adopted from Nebraska, and is a later enactment than that regulating cities of the first class and must be construed with it. It provides: "It shall be competent and lawful for any incorporated village or city within the county where such bond is filed and license granted, to prohibit the party so licensed, as well as others, from engaging in the business of selling intoxicating liquors at retail within the corporate limits or within two miles thereof, until he shall obtain from the villiage, town or city authorities a license, and pay into the village, town or city treasury such sum as may be fixed by ordinance to be not less than one hundred dollars nor more than five hundred dollars. Provided, that no additional bond shall be required, nor shall any license be granted by the authorities of any such village, town or city, to any one who has not filed the required bond with the board of county commisioners and obtained from such board a license; and provided further, that no license shall run for a longer period than the license granted by such board; and the revocation of the county license by the board of county commissioners shall work a revocation of any license granted under the provisions of this section."

There is no conflict between these sections. Upon the other hand they are consistent and harmonious. Here the city council is again empowered to · by ordinance prohibit the sale of intoxicating liquors by any person until they shall have obtained a city license, and they are not entitled to a city license until they have procured a county license. But does the· possession of a county license entitle the holder to a city license? It is contended by the city that it may prescribe additional qualifications for the

.applicant and fix different requirements. Upon the other hand, counsel for the defendants in error contends that the city has only the power to assess a tax for revenue purposes against the liquor dealer, and has no further powers. We cannot accept either of these contentions. The mayor and city council are expressly authorized to grant a license; they fix the amount of the license fee, and must require the applicant to produce his bond and county license before granting him a license. The statute prescribes the qualifications of an applicant for a city license, he must be a man having a license from the county authorities, and have filed his bond with the county clerk; he must have paid to the city treasurer the sum prescribed by ordinance for a city license. Such a person is entitled to a city license, and the mayor and city council have no power or authority to prescribe any additional qualifications or requirements. It does not follow that the mayor and city council may not, under their grant of power contained in the general law under which it is incorporated, "to enact ordinances to restrain, prohibit and suppress tippling houses", adopt such ordinances as may be just and proper for the regulation of the places where liquors are sold. Nor do we intend to hold that they may not by ordinances prescribe the portion of the city where liquors may or may not be sold; these matters do not go to the qualifications of the persons to have a license.

It is next contended upon the part of the city that the defendants in error, having failed to procure a license from the city, were engaged in an unlawful business and that each sale made by them is unlawful as being in violation of the ordinance in question. The defendants in error contend that, having done all that the law requires of them to obtain a license, they are entitled to a license and in the same position as if the license had been granted. The statute is that the city authorities may prohibit the sale of liquors by either a licensed or unlicensed dealer until he shall obtain a license from the city authorities. The city, by section 1 of Ordinance No. 484, has made it unlawful for any one to

sell intoxicating liquors within the limits of two miles of the city. "Within the limits of two miles thereof" does not mean within the city, but within a two miles limit without the city. If this is not true, at what point would one begin to measure to find a two mile limit within the city? This may be error in the copy we have before us, but such is the record, and the defendants cannot be guilty of any wrong under the provisions of section 1. The next section is set out *supra,* and relates to the procedure for obtaining a license, and we have already held a portion of that section in excess of the powers of a city council and to that extent void. Section 3 provides: "Any person or persons who shall, within the limits of said city or within two miles thereof, sell or give away any malt, spirituous, vinous or mixed liquors, without having first taken out a license from said mayor and city council, *as heretofore provided,* shall be deemed guilty of a misdemeanor and upon conviction therof," etc., "shall be fined," etc. The words "as heretofore provided," in this section, should be construed as heretofore lawfully and legally provided, and only embracing such portions of section 2 as are within the powers of the mayor and council to enact; and thus construed, section three contains a valid prohibition against the sale of intoxicating liquors within the city without a city license.

One or two courts have held that such a compliance with the law by an applicant for license as entitles him to a license is equivalent to having the license, but this is not the general rule, and such holding is in that class of cases where the law treats the license fee as a  tax or revenue provision rather than as a license. The rule is stated in 23 Cyc. 120, as follows: "Compliance with all the conditions necessary to obtain a license is not equivalent to the actual issue of the license. Although a person may have presented a proper and sufficient application, executed the required bond and tendered the proper fee, be can not legally begin selling until he has received the license." And this is supported by the following adjudications: *State v. White,* 23 Ark.

275; *Roberts v. State,* 26 Fla. 360; *Franklin v. Stringham,* 56 Ill. App. 94; *People v. Gault,* 104 Mich. 575; *Jorden v. Bespalec,* 83 Minn. 441; *State v. Huntley,* 29 Mo. App. 278; *Shea v. Muncie,* 148 Ind. 14; *Curry v. State,* 28 Tex. App. 477, 13 S. W. 773.

Conceding for the purpose of the argument that the defendants in error were selling liquor in violation of a void ordinance, will injunction lie to restrain them from conducting such unlawful business? The courts of some states have granted such relief. In *Loftin v. Collins,* 61 L. R. A. 150, the Georgia supreme court held that the unlawful sale of intoxicating liquors constitutes a public nuisance and granted an injunction. The general rule is that the keeping of a place where intoxicating liquors are sold, either lawfuly or unlawfully, does not constitute such place a nuisance *per se.* It is the disorderly character of a place that constitutes it a nuisance. If dissolute persons are permitted to congregate about a place where liquors are kept, and engage in drinking, tippling, carousing, swearing, hollowing and otherwise disturbing the peace and quiet of the neighborhood, such place was a nuisance at common law, and the keepers might be proceeded against either criminally or by suit to enjoin. Joyce, Law of Nuisances. sec. 400. But the question as to whether a saloon or place where liquors are sold or kept for sale may be enjoined or restrained as a nuisance is governed almost entirely by statute, and many of the states have authorized special proceedings by injunction to abate places where liquors are unlawfully kept or sold. We have no such statutes in this territory. We have statutes defining what are public and what are private nuisances, but the unlawful selling of intoxicating liquors is not designated as a nuisance; whether such place is a nuisance must depend upon the manner in which it is kept, and this is a question of fact to be specially alleged and proven.

In that valuable treatise on the law of Nuisances, by Joyce, the rule of equitable intervention is thus stated in section 415: "Outside of those statutes which confer equitable jurisdiction or

give an equitable remedy or relief, as may be instanced by the case of a liquor nuisance, the controlling principles are that equity will interfere where the injury or mischief are irreparable and there exists no adequate remedy at law or no redress at law wherein the damages can be measured or where there can be no adequate compensation in damages, or where such exercise of jurisdiction is necessary to prevent multiplicity of suits, or oppressive, protracted, expensive and interminable litigation. An injunction may, however, issue in case of a nuisance *per se,* or to prevent a serious injury to health, or in case of imminent danger or where the nuisance is a continuing or constantly recurring one. But it is also determined in numerous cases that the right and the injury should be established by satisfactory evidence; that is, the right should be clear, manifest and strongly established, and not doubtful, probable, contingent, consequential, remote, uncertain, speculative, or merely apprehended, and that the injury or damage should be real, material, substantial, serious, exceptional, certain, immediate, and the danger imminent; or, as some of the courts express it, there should be a strong case of urgent or pressing necessity. It is further declared that equity will exercise caution in abating or enjoining a nuisance."

The petition in this case contains no such averments as Mr. Joyce says are required in states where there are no statutes authorizing proceedings by injunction. The plaintiff in error was not entitled to the relief demand, and the trial court committed no error in refusing the temporary injunction.

The order of the district court is affirmed, at the cost of the plaintiff in error.

Burwell, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.