No. 19,752.

STANLEY HEIGHTS PROPERTY OWNERS ASSOCIATION, INC.,
v. OTIS L. WHITESIDE, ET AL.
(378 P. [2d] 399)

Decided February 4, 1963.

Mr. STEVENS PARK KINNEY, for plaintiff in error.

Messrs. CROSS and CHRISTENSEN, for defendants in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE FRANTZ.

THE Whitesides obtained injunctive relief against Stanley Heights Property Owners Association, Inc., and

the latter is here by writ of error asserting that the decree of injunction was erroneously entered.

The Whitesides owned and operated a livery stable in Estes Park, Colorado. They and their predecessors in the operation of the livery stable had conducted guided tours in the Estes Park area. At the time of the suit, they had 45 riding horses, which they used in their business.

Livery stable owners, including the Whitesides and their predecessors, had used certain trails for these guided tours, which traversed an area later subdivided under the name of Stanley Heights. After subdivision the guided tours moved over the roads and roadways of the platted tract to reach the scenic places over which the patrons were to ride. To reach this area otherwise would necessitate a circuitous route over heavily traveled streets in Estes Park. The use of such alternative route would be hazardous; it would expose novice riders and the traffic on the streets at the time to the dangers inherent in such a situation.

On October 28, 1948, the International Trust Company, as trustee, executed a "Declaration," which was recorded on November 6, 1948, in Larimer County, subdividing the area in question and designating the area subdivided as Stanley Heights. Attached to the Declaration was a plat containing 54 lots of varying sizes. At the time of the execution of the instrument, 28 of these lots had been sold.

By the terms of the Declaration, the International Trust Company declared "that all of the lands in said 'Stanley Heights' were and are held subject to the following restrictions, covenants, and conditions and easements, all of which shall be deemed to run with the land and inure to the benefit of, and to be binding upon the owner at any time of any of said lots, his heirs and assigns, to wit:

\* \* \*

"8. The foregoing restrictions and covenants running

with the land shall not be construed to prevent the selection, reservation, and use of such portions of the tract, described above as 'Stanley Heights,' for street or highway purposes, with or without dedication thereof, to the extent necessary for the development and enjoyment on said tract of a mountain-home community such as is intended to be created by the above restrictions and covenants running with the land. As to any portions of said tract as are selected and reserved for street or highway purposes, including the lands designated as 'road' on the attached map marked Exhibit A, the undersigned Trustee gives and grants to each and all of the owners of lots in said 'Stanley Heights,' their respective heirs, successors and assigns, a perpetual right of way over said portions so selected and reserved, to use the same as a public road and highway, with the right of ingress and egress, which said right shall constitute a covenant running with the land appurtenant to each of the lots in said 'Stanley Heights,' and shall inure to the benefit of the owners of said lots and all persons claiming by, through, or under them."

On January 20, 1959, the First National Bank of Denver, as trustee (being the successor to the International Trust Company), executed a "Trustee's Deed" and recorded it on January 27, 1959. By this instrument, the First National Bank of Denver "sold and conveyed and by these presents does sell and convey unto [Stanley Heights Property Owners Association, Inc.], its successors and assigns forever all of the right, title and interest of the grantor in and to the following described real estate lying and being in the County of Larimer in the State of Colorado; to wit, all of the roads and roadways as platted in Stanley Heights * * * as the same are now constituted and exist in said Stanley Heights * * * subject, however, to existing easements, rights of parties in possession and the actual location of

such roads and roadways as may be revealed by an accurate survey.

"TO HAVE AND TO HOLD the same, with all the appurtenances as thereunto belonging or in any wise appertaining to the proper use, benefit and behoof of said grantees, their heirs and assigns forever."

Acting under the authority it assumed it had by virtue of the Trustee's Deed, the Association commenced the construction of cattle guards over the roads and roadways leading into and over the area known as Stanley Heights. In answer to the complaint of the Whitesides, seeking an injunction against the construction of these cattle guards, on the theory that they formed obstructions to the use of the roads and roadways, the Association justified the placement of these cattle guards on a number of alleged grounds.

In the course of the trial, evidence was introduced for and against the existence of roads and roadways public in nature by reason of adverse use. At the conclusion of the trial, the court expressed the view that the Declaration expressed an intent "that the roads and streets were to be public roads and streets," but that it did not think it "necessary to go into the question of dedication." The trial court was of the opinion that the Trustee's Deed granted no rights to the Association, and that any attempt in that instrument to convey "would be contrary to the grant made in" the Declaration.

The trial court concluded, therefore, that the Association "would take nothing under the deed," and, that being the result flowing from the instruments, it was a stranger seeking to obstruct the roads and roadways traversing Stanley Heights. Being a stranger, it should be enjoined from building the cattle guards. It was thereupon enjoined from interfering in any manner with the use of said roads and roadways by the Whitesides and their patrons.

Whether the roads and roadways were public roads

and streets or private ways can make no difference in the ultimate outcome of this case. This results from the relation that the Association bears to the roads and streets in the platted area.

■ If the roads and roadways are public highways, whether by reason of adverse use or through dedication, the Association would have no right to obstruct them. Since it would have no right to obstruct these ways of travel, it would be amenable to judicial restraint, once the authority of the court had been properly invoked. Hence, the trial court could correctly order the cessation of interference with the use, by the Whitesides and their patrons, of these roads and roadways. *Sprague v. Stead*, 56 Colo. 538, 139 Pac. 544; *Bowen v. Turgoose*, 136 Colo. 137, 314 P. (2d) 694.

■ If these passageways were conveyed to the owners of the lots for their accommodation in gaining ingress or egress to and from their properties, either for themselves or such as they may expressly or impliedly invite upon their premises, the grant established private ways. See *Cox v. Oklahoma Tax Commission*, 197 Okla. 12, 168 P. (2d) 634. The fact that the roads and roadways in question were not built for the convenience of the Association leaves the Association without any interest as to who uses them. At best, the Association is a mere volunteer in its attempt to interfere with the use of the roads and roadways in Stanley Heights. See *Board of Trade v. Price*, 213 Fed. 336.

The trial court properly held that the Association had no interest in how and by whom the roads and roadways in Stanley Heights were used.

It follows that the judgment must be affirmed.

Mr. Justice Sutton and Mr. Justice Day concur.